UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLOU H., <br><br>                                     Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>                                     Defendant. | Case No.:  3:21-cv-01574-AHG <br><br> **ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW IN PLAINTIFF'S FAVOR AND REMANDING FOR FURTHER PROCEEDINGS** <br><br> **[ECF No. 19]** |

      Plaintiff Marlou H. ("Plaintiff") filed this action on September 7, 2021, seeking review of the Commissioner of Social Security's ("Commissioner") denial of her application for Supplemental Social Security Income. ECF No. 1. The parties consented to proceed before a Magistrate Judge on September 13, 2021. ECF No. 7; General Order 707 (S.D. Cal. Apr. 12, 2019). Pursuant to the Court's Order, the parties filed a Joint Motion for Judicial Review on October 25, 2022, stating their positions on the disputed issue in the case. ECF No. 19. The Court has taken the Joint Motion under submission without oral argument.

      For the reasons set forth below, the Court **GRANTS** the Joint Motion, **REVERSES** the Commissioner's denial of benefits to Plaintiff, and **REMANDS** for further proceedings.

## I. PROCEDURAL BACKGROUND

Plaintiff was born on May 28, 1965. AR 198. She has past relevant work experience as a Fountain Server, Bus Driver, and Home Attendant. AR 26. The Commissioner previously found Plaintiff to be disabled from February 1, 2006 to June 1, 2007, due to post traumatic stress disorder and major depressive disorder. AR 75. Following that period of disability, Plaintiff worked on and off in 2008, 2009, 2015, 2016, and 2017. AR 198, 215.

On August 10, 2018, Plaintiff filed an application for Supplemental Security Income, alleging a new disability onset date of August 1, 2018 due to her impairments of anxiety, depression, and post traumatic stress disorder. AR 198, 221. The application was denied upon initial review and reconsideration, at which point Plaintiff requested a hearing before an administrative law judge ("ALJ"). AR 81-108, 127-28. The hearing took place on October 20, 2020. AR 33-74. On November 19, 2020, the ALJ issued a decision denying Plaintiff's application. AR 28. Plaintiff requested review of the decision on January 20, 2021. AR 195-97. The Appeals Council denied Plaintiff's request for review on July 26, 2021. AR 1. When the Appeals Council denied that request, the ALJ's decision became the final decision of the Commissioner. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008). Plaintiff then timely appealed the Commissioner's final decision to this Court. ECF No. 1.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should

be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676. 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

### III. SUMMARY OF ALJ'S FINDINGS

An ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, an ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). *See also* 20 C.F.R. § 416.920(a)(4). Here, at step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of August 1, 2018. AR 21.

At step two, an ALJ must determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. *Lounsburry*, 468 F.3d at 1114. Here, at step two, the ALJ determined that Plaintiff has the following severe impairments: depression, anxiety, and post-traumatic stress disorder. AR 21.

At step three, an ALJ must determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listings") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Lounsburry*, 468 F.3d at 1114. Here, the ALJ determined that

Plaintiff's severe impairments, separately or in combination, do not meet or medically equal an impairment in the Listings. AR 22-23.

Between step three and step four, an ALJ must determine the claimant's residual functional capacity ("RFC"). An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" taking into consideration the "functional limitations and restrictions that result from an individual's medically determinable impairment of combination of impairments, including the impact of any related symptoms." Soc. Sec. Ruling ("SSR")[1] 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). It reflects the most a claimant can do despite her limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of her impairments – even those that are not severe (*see* 20 C.F.R. § 416.945(a)(1)–(2), (e)) – and must assess her "work-related abilities on a function-by-function basis." SSR 96-98, 1996 WL 374184, at *1; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). The RFC assessment is an administrative finding reserved to the ALJ. 20 C.F.R. § 416.927(d)(2). It must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 416.945(a)(3).

Here, the ALJ assessed that Plaintiff's RFC allows her "to perform a full range of work at all exertional levels but with the following nonexertional limitations: understanding, remembering, and carrying out simple, routine, repetitive tasks, with breaks every two hours, to no interaction with the general public, and to occasional work-related,

---

[1] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product; cannot perform highly time pressured tasks such that the claimant is limited to generally goal-oriented work, not time-sensitive strict production quotas (that is, production rate pace work with strict by the minute or by the hour production quotas that are frequently and/or constantly monitored by supervisors or that are fast paced); must work in a low stress environment where there are few work place changes." AR 23.

At step four of the disability analysis, if an ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that she is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.* Here, at step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. AR 26.

At step five, the burden shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.960(c)(1), (c)(2); *see also* 20 C.F.R. § 416.920(g)(1). An ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Lounsburry*, 468 F.3d at 1114–15; *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012). Here, at step five, the ALJ found that Plaintiff could perform the occupations of floor waxer (DICOT 381.687-034), caretaker (DICOT 301.687-010), collator operator (DICOT 208.685-010), routing clerk (DICOT 222.687-022), marker (DICOT 209.587-034), and router (DICOT 222.587-038), so the ALJ determined that Plaintiff was not disabled. AR 27.

\\
\\

## IV. THE ALJ ERRED IN DISCREDITING PLAINTIFF'S TESTIMONY

Plaintiff contends that the ALJ erred when he rejected Plaintiff's statements regarding the severity and extent of her symptoms without stating specific, clear and convincing reasons for doing so. ECF No. 19 at 6. Plaintiff argues that this was harmful error, and the Court should remand for an award of benefits to Plaintiff under the "credit-as-true" rule. *Id*. at 10.

Defendant denies that the ALJ erred in discrediting Plaintiff's testimony and argues that the medical evidence did not fully support the claimed severity of Plaintiff's symptoms and limitations. *Id*. at 13. Defendant also argues that other evidence in the record, including Plaintiff's daily activities, does not support Plaintiff's testimony. *Id.* Alternatively, if the Court finds error, Defendant contends that it would be improper to remand for an award of benefits because the record does not show clearly that Plaintiff is disabled. *Id*. at 20.

For the reasons set forth below, the Court finds that the ALJ committed reversible error in evaluating Plaintiff's statements.

### A. Legal Standard

An ALJ evaluating a claimant's subjective complaints must follow a two-step inquiry. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). First, an ALJ must assess whether there is objective medical evidence to support the complaints. *Id.* At the first step, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; rather, she need only show that it could reasonably have caused some degree of the symptom. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014). Nor is the claimant required to produce objective medical evidence of the symptoms alleged, or the severity of those symptoms. *Id.* If the claimant satisfies the first step, and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). An ALJ must "specifically identify the testimony she or he finds not to be credible ... and explain

what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).[2] "[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680.

If the ALJ fails to meet these requirements for specificity, the Court is not free to fill in the gaps. *Lambert*, 980 F.3d at 1278. It is solely within the ALJ's province to assess the credibility of the claimant's testimony. *Id.* A court is therefore "constrained to review the reasons the ALJ asserts." *Id.* (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

\\
\\

---

[2] On March 28, 2016, the Social Security Administration issued new guidance regarding how to evaluate a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2017 WL 5180304 (Oct. 25, 2017) (clarifying SSR 16-3p). Additionally, effective March 27, 2017, the Social Security Administration updated the relevant agency regulations regarding how a claimant's symptoms are evaluated. *See* 20 C.F.R. § 416.929. The Agency explained that the purpose of the new guidance was to "eliminat[e] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2. Although the ALJ's opinion was issued after these changes, the jurisprudence governing the applicable two-step inquiry remains good law. *See, e.g.*, *Campbell v. Saul*, 848 F. App'x 718, 721 (9th Cir. 2021) (applying the two-step inquiry in a recent case appealing an ALJ's decision from 2018, in which the newer regulations were applied); *Vooge v. Saul*, 840 F. App'x 253, 254 (9th Cir. 2021) (same, in case involving an ALJ's opinion issued in January 2019). *See also Trevizo*, 871 F.3d at 678 n.5 (noting SSR 16-3p is consistent with existing Ninth Circuit precedent regarding the ALJ's assessments of an individual's testimony).

### B. Plaintiff's Statements

The ALJ considered Plaintiff's statements regarding the severity of her symptoms from her Disability Reports and her testimony at the October 20, 2020 hearing, AR 33-74. In the Disability Report dated August 10, 2018, Plaintiff noted that she could not work because of anxiety, depression, and PTSD. AR 221. In the Disability Report dated December 31, 2018, Plaintiff noted that she had problems sleeping, heightened anxiety, and was experiencing anxiety and panic attacks that include shortness of breath and chest pain. AR 237. As to daily activities, the Report states that "[d]ue to depression and anxiety, personal hygiene can be forgotten. It can take days to be able to take care of those needs. [Plaintiff] doesn't leave the house much except for doctor appointments. She has trouble focusing or completing tasks such as chores." AR 241. The Report further states that Plaintiff's condition was worsening, and that she "has crying spells that she can't control and panic attacks. The attacks cause shortness of breath, chest pain and insomnia." AR 242.

At the hearing on October 20, 2020, Plaintiff testified that she cannot work because of PTSD, depression, and feelings of detachment. AR 46. She stated that she has "crying episodes," feels "detached and emotionally cut off," and feels "weak, low energy, drained energy." AR 46-47. Her PTSD symptoms include "uncontrollable crying, suspicious, and trusting issues, just emotionally cut off and detached." AR 50. Plaintiff experiences those symptoms daily. AR 50. During an average day, Plaintiff sleeps, cries, and walks her dog. AR 51. Plaintiff's daughters handle the shopping. AR 52. Plaintiff takes medication and participates in therapy. AR 47-48.

### C. The ALJ's Reasons for Rejecting Plaintiff's Testimony

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her symptoms, satisfying the first step of the inquiry. AR 24. The ALJ found no evidence of malingering. The ALJ was therefore required to state "specific, clear and convincing reasons, supported by substantial evidence from the administrative record" for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms. *Austin v. Saul*, 840 F. App'x 899, 901

(9th Cir. 2020) (quoting *Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (punctuation omitted)).

The Court finds that the ALJ erred in rejecting Plaintiff's testimony because the reasons given by the ALJ for doing so did not identify specific testimony that was contradicted, and the reasons were not clear and convincing. *See Trevizo*, 871 F.3d at 679.

### 1. Failure to Identify Inconsistent Testimony

An ALJ is required to "specifically identify the testimony ... he finds not to be credible and ... explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208. Here, the ALJ made a boilerplate statement regarding Plaintiff's testimony that is commonly found in ALJ decisions:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR 24. Courts have found this same language to be too general and boilerplate to satisfy the requirement that an ALJ specifically identify the testimony of the claimant that should be discredited. In *Lambert*, for example, the Ninth Circuit found that identical boilerplate language was insufficient to meet the ALJ's burden:

> The ALJ's decision does not meet the requirements set forth in our cases and does not permit meaningful review. The ALJ noted generically that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence in the record for the reasons explained in the decision." But this "boilerplate statement" by way of "introductory remark," which is "routinely include[d]" in ALJ decisions denying benefits, did not "identify what parts of the claimant's testimony were not credible and why."

*Lambert*, 980 F.3d at 1277; *Burrell*, 775 F.3d at 1138 (general statement that testimony is "inconsistent in some unspecified way" is insufficient); *Treichler*, 775 F.3d at 1103 (noting

that identical boilerplate statement was insufficient because the "ALJ must identify the testimony that was not credible").

The problem with this boilerplate language is that "statements concerning the intensity, persistence and limiting effects" is too general a description for the Court to understand precisely what portions of Plaintiff's testimony are claimed to be inconsistent with other evidence in the record. *Isis A. v. Saul*, No. 18cv01728-W-MSB, 2019 WL 3554969, at *4 (S.D. Cal. Aug. 5, 2019) ("When an ALJ fails to specify the rejected testimony and how the evidence provides clear and convincing reasons to reject it, the reviewing court cannot proceed without 'substitut[ing its own] conclusions for the ALJs, or speculat[ing] as to the grounds for the ALJ's decision.") (quoting *Treichler*, 775 F.3d at 1103). Plaintiff's description of the severity of her symptoms is that she experiences pervasive anxiety, panic attacks, crying episodes, low energy, inability to focus on and complete tasks, and insomnia. These symptoms and effects of her depression, anxiety disorder, and PTSD are different and cannot be treated as a unitary complaint. This leaves the Court to attempt to ascertain whether the evidence relied on by the ALJ is inconsistent with any, or all, of these symptoms and effects. That alone is reversible error. *Lambert*, 980 F.3d at 1278. Nonetheless, the Court will address what it gleans to be the reasons provided by the ALJ to discredit Plaintiff's testimony based on his overall analysis of the record with respect to her mental limitations.

### 2. Treatment Notes from July 2018

The ALJ considered treatment notes from an initial psychiatric evaluation of Plaintiff in July 2018. AR 24. Although the ALJ accurately summarized the notes, he failed to identify which of Plaintiff's symptoms the notes contradict, or explain why they provide a clear and convincing reason for rejecting Plaintiff's statements. The notes appear to be largely consistent with Plaintiff's symptoms. They indicate that Plaintiff "feels very paranoid of strangers, has insomnia, hypervigilant, and experiences flash backs 3x month. She feels she dissociates during the flash backs. She feels that she forgets things easily and is concerned about her memory. She avoids the South Bay aside from coming to the clinic.

She avoid [sic] Tijuana, crowded and public spaces. She socially isolates herself and doesn't really speak to anyone." AR 282. Although the ALJ contends that Plaintiff "reported a positive response to medication for anxiety," AR 24, which may be a reference to the note that Ativan helps her panic attacks, the notes also indicate that Plaintiff had recently started Prozac but was not sure if it was helping, that Citalopram was "not effective[,]" that Clonazepam "didn't work" and that Xanax caused headaches. AR 282.

The ALJ noted that Plaintiff "reported that she was able to go to six flags with her daughters recently and was still able to enjoy things." AR 24. An ALJ is permitted to consider a claimant's daily activities when evaluating whether to credit her subjective statements regarding the persistence, intensity, and limiting effects of her symptoms. *See Burch*, 400 F.3d at 681 ("The ALJ was permitted to consider daily living activities in his credibility analysis. . . . [I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities."). But Plaintiff's ability to enjoy time with family and go on a one-day outing with the support of family are not inconsistent with her statements that she has difficulties with focus, anxiety, and interacting with people. *See Burrell*, 775 F.3d at 1128 (ALJ's reasoning was insufficient because he failed to explain why claimant's daily activities were inconsistent with being depressed and unable to be around other people). These activities also do not indicate "capacities that are transferable to a work setting." *Jacob P. v. Commissioner of Social Security*, Case No. 3:19-cv-06063-JRC, 2020 WL 5747813, *4 (W.D. Wash. Sep. 25, 2020). *See also Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding error where an ALJ failed to "specifically link the testimony" about the claimant's daily activities to the conclusion that the claimant's testimony lacked credibility, and made "absolutely no finding to the effect that the ability to perform those daily activities translated into the ability to perform appropriate work"); *Sandoval v. Saul*, No. 19-CV-1477-WVG, 2020 WL 4347514, at *22 (S.D. Cal. July 28, 2020) ("Certain activities that involve many of the same physical tasks as working may bolster a finding of non-credibility."). The ALJ did

not specifically link Plaintiff's report in July 2018 that she went to Six Flags with her daughters to Plaintiff's statements that she experiences anxiety, panic attacks with shortness of breath and chest pain, crying spells, and insomnia, nor did he explain how the ability to do so translates into the ability to perform appropriate work. Therefore, the ALJ's summary of these treatment notes does not provide a clear and convincing reason to reject Plaintiff's statements.

### 3. Treatment Notes from August 2018

Next, the ALJ reviewed treatment notes from a follow-up therapy appointment in August 2018. Again, the ALJ accurately summarized the treatment notes, but failed to identify which of Plaintiff's subjective statements regarding her symptoms the notes contradict, or explain why they provide a clear and convincing reason for rejecting Plaintiff's statements. The Court assumes the import of these notes is that they indicate that some of Plaintiff's financial concerns and pressures had been alleviated and that Plaintiff "emphasized that she was doing well because she was spending time with her daughters." AR 281. In other words, Plaintiff appeared to be showing some improvement in her symptoms. But these notes must be viewed in the entire context of the record. Later treatment notes, which the ALJ discusses, indicate that Plaintiff's symptoms worsened after this point in time. That is consistent with the nature of mental health challenges. *Guadalupe C. v. Saul*, Case No. CV-19-2024 MRW, 2020 WL 11039194, *3 (C.D. Cal. Oct. 8, 2020) ("Ample Ninth Circuit authority recognizes that the symptoms of mental health conditions typically do not remain stable."); AR 24-25 (discussing later treatment notes from April 2019 where Plaintiff reported "climbing" anxiety, and from April 2020 when she reported "high anxiety").

The Ninth Circuit has explained that reports of "improvement" in the context of mental health issues "must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."

*Garrison*, 759 F.3d at 1017. The ALJ cannot selectively cite to treatment notes that may suggest improvement but ignore the overall context in which they are made. *Ghanim*, 763 F.3d at 1162 (treatment notes must be "read in context of the overall diagnostic picture the provider draws") (citations omitted). And, as explained in more detail below, the overall picture does not support a finding that Plaintiff's symptoms were alleviated over the long term. The ALJ's summary of these treatment notes does not provide a clear and convincing reason to reject Plaintiff's statements.

### 4. Other Treatment Notes from April 2019 through April 2020

Next, the ALJ reviewed treatment notes from various therapy sessions from April 2019 through April 2020. The April 2019 treatment notes indicate "no depression anymore." AR 464. Yet a few months later, in July 2019, the treatment notes indicate that Plaintiff's anxiety was "climbing," that she had stopped taking medication because it was not making a difference, and she had stopped counseling. AR 457. Notes from a September 2019 follow-up appointment include the observation that Plaintiff "presented with anxious mood," and also indicate that Plaintiff was actively taking medication to treat anxiety. AR 453. In February 2020, the treatment notes indicate that Plaintiff had begun taking Prozac again, that her anxiety was "a little" better, and no complaints regarding depression. AR 446. In April 2020, Plaintiff reported that her anxiety level was "very high," that she was "trying to stay in," "taking more frequently Ativan," and that she often feels sad/depressed. AR 443. Again, these treatment notes reflect the up-and-down nature of mental health challenges -- not a steady progression toward improvement.

Even if the record might reflect intermittent signs of improvement, they would not be sufficient to contradict Plaintiff's testimony. "The fact that a person suffering from depression makes some improvement 'does not mean that the person's impairment [] no longer seriously affect[s] [his] ability to function in a workplace.'" *Ghanim*, 763 F.3d at 1162 (quoting *Holohan*, 246 F.3d at 1205); *Garrison*, 759 F.3d. at 1017 (noting that periods of improvement "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that

a claimant can function effectively in a workplace."). Indeed, when Plaintiff was first approved for a period of disability from February 1, 2006 to June 1, 2007, the Agency's rationale for its decision stated in part that Plaintiff had experienced traumatic and high-stress life circumstances, leading to "active symptoms of post traumatic stress disorder and a major depressive disorder[,]" during which time "her mind was consumed by her depression[.]" AR 79. However, by June 2, 2007, Plaintiff "had recovered sufficiently where she could be the primary caregiver for her children and mother. Her mental symptoms diminished as she got her affairs in order and the domestic violence issues resolved." AR 79. Thus, consistent with the Ninth Circuit's opinion in *Garrison*, the Agency properly recognized that the severity of Plaintiff's mental health symptoms fluctuated, in part due to changes in her immediate environmental stressors.

Here, however, the ALJ summarized treatment notes that painted an overall picture showing that Plaintiff's mental health symptoms were up and down, and implied that Plaintiff's subjective statements regarding her symptoms were not credible because she had short periods of improvement when immediate stressors were alleviated, even though more recent treatment notes showed her symptoms were exacerbated when environmental stressors returned. *See, e.g.*, AR 440 (increased anxiety in May 2020 due to mice in her apartment); AR 443 ("very high" anxiety level in April 2020 when Plaintiff had a rash on her chest); AR 449-50 (Plaintiff was "tearful" and complained of anxiety, little interest or pleasure in doing things, and feeling down, depressed, or hopeless during January 2020 visit); AR 453 (Plaintiff reported heightened anxiety due to reservations about her daughter's new boyfriend in September 2019); AR 457, 460 (Plaintiff reported "climbing" anxiety in July 2019 due to financial pressures and "feeling emotional and worried" due to needing dental surgery). Therefore, the ALJ's summary of these treatment notes does not provide a clear and convincing reason to reject Plaintiff's statements.

### 5. Improvement with Medication

Finally, the ALJ found that "the record indicates improvement of symptoms with psychotropic medications." AR 25. As discussed above, however, the record does not show

steady progression or substantial improvement based on the use of medications. Indeed, many of the very same treatment notes cited by the ALJ in support of this conclusion reflect that Plaintiff's symptoms remained severe despite some positive responses to certain medications. *See, e.g.*, AR 284 (July 2018 treatment notes cited by the ALJ in which Plaintiff "reports a positive response to Lorazepam for anxiety" but where her doctor also noted that Plaintiff "continues to demonstrate severe symptoms including flash backs, dissociation, panic attacks, insomnia, GI upset, avoidance and social isolation"); AR 464 (April 2019 treatment notes cited by the ALJ indicating "no depression anymore" but also indicating persistent anxiety, that clonazepam "didn't work," and that Prozac "didn't help"). This does not provide a clear and convincing reason to reject Plaintiff's statements.

## V.  THE APPROPRIATE REMEDY

Having found that the ALJ erred, the next steps for the Court are to determine whether the error is harmless, and if not, the appropriate remedy. If an ALJ's error is harmless, his decision will not be reversed. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An ALJ's error is only harmless if it is "inconsequential to the ultimate nondisability determination." *Id.* at 1115 (quoting *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008)). When, as here, an ALJ makes only "a general credibility finding" without linking portions of the record to specific testimony that the ALJ finds not to be credible, the error is not harmless. *Brown-Hunter*, 806 F.3d at 494.

The Court applies the "credit-as-true" rule when determining whether a case should be remanded for payment of benefits or for further proceedings. *Trevizo*, 871 F.3d at 682. That test requires the court to assess three factors: (1) whether "the record has been fully developed and further administrative proceedings would serve no useful purpose;" (2) whether "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" and (3) whether "the ALJ would be required to find the claimant disabled on remand" if the discredited evidence were treated as true. *Id.* at 683 (quoting *Garrison*, 759 F.3d at 1020). If all three factors are present, a court can remand the case for payment of benefits. *Burrell*, 775 F.3d at 1141.

The Court need not look beyond the first factor to determine that the proper remedy is to remand for further proceedings. To determine whether further administrative proceedings would be useful, a court should consider "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal standard." *Treichler*, 775 F.3d at 1103-04. "[T]he key consideration is whether remanding for further administrative proceedings would serve a useful purpose or would instead unnecessarily extend a claimant['s] long wait for benefits." *Norris v. Colvin*, 160 F. Supp. 3d 1251, 1284 (E.D. Wash. 2016) (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). Here, there are significant gaps in the record that demonstrate further proceedings would be useful. The record does not contain any medical opinions by a physician who examined Plaintiff, either as a treating physician or consultative examiner. The importance of such an opinion is underscored by the fact that Plaintiff's limitations are mental, not physical. It is difficult to fathom how a disability determination could be made without such an opinion. For example, although there are ample treatment notes documenting Plaintiff's depression and anxiety, there is no medical evaluation regarding how these conditions affect Plaintiff's ability to perform sustained work. This is a significant gap in the record, because the Vocational Expert testified at the hearing that if Plaintiff was unable to perform sustained work, there would be no work available:

> Q. All right. Let's say that she were taking two or more additional breaks [beyond the "breaks every two hours" ultimately provided in Plaintiff's RFC], ten minutes or more apiece, during the work day. And this is based upon your experience. Would there be any work for this person?
>
> A. That would be an accommodation, Judge. So not without accommodations.
>
> Q. And if this person would miss two or more days a month consistently, also based on your experience, would there by any work for that person?
>
> A. No. Such a person would not be able to maintain employment if they're absent that much.

> Q. And if they were off-task 15% or more during the work day, also based on your experience, would there be any work for this person?
>
> A. No, Judge.

AR 59. However, Plaintiff's subjective statements regarding her own limitations do not indicate how many breaks she would need or whether she would miss work two or more days per month. *See generally* AR 37-53 (claimant's hearing testimony). Moreover, it is the responsibility of the ALJ to translate a claimant's impairments into functional limitations in the RFC. *Benjamin H. v. Saul*, No. 3:19-CV-2177-JM-LL, 2020 WL 6131725, at *13 (S.D. Cal. Oct. 19, 2020), *report and recommendation adopted*, 2021 WL 6113742 (S.D. Cal. Feb. 17, 2021). Further administrative proceedings would serve a useful purpose here. *See, e.g.*, *O'Connor v. Berryhill*, 355 F. Supp. 3d 972, 986-87 (W.D. Wash. 2019) (remanding for further proceedings where, even if a medical opinion and the claimant's testimony were credited as true, the Court found it was "not clear how the opined limitations" or the claimant's own testimony "would translate into an RFC").

In remanding for further proceedings, the Court is following the Ninth Circuit's guidance that the proper course, save for exceptional circumstances, is to remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1100 ("we generally remand for an award of benefits only in 'rare circumstances'") (quoting *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004)). To be clear, the Court is not denying Plaintiff's request to remand for benefits because it has serious doubts about Plaintiff's disability. *Cf. Burrell,* 775 F.3d at 1141. Plaintiff's RFC and the ultimate disability determination depend on a proper assessment of Plaintiff's testimony and a review of any additional medical evidence that may be available on remand. *See Dominguez*, 808 F.3d at 409 (appropriate to remand case for further proceedings because "it is up to the ALJ, not the court" to formulate a proper RFC).

\\
\\
\\

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ committed reversible error by rejecting Plaintiff's testimony without providing specific, clear, and convincing reasons for doing so.

The Court therefore **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g), and **REMANDS** this action for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: March 22, 2023

_____
Honorable Allison H. Goddard
United States Magistrate Judge